IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES MCDONALD,

                  Plaintiff,                  OPINION AND ORDER

v.

                                        19-cv-230-wmc

OFFICER MURPHY,
SGT. NYBUS, and
OFFICER POLLACK,

                  Defendants.

Under 42 U.S.C. § 1983, the court granted *pro se* plaintiff James McDonald, a prisoner at Jackson Correctional Institution ("Jackson"), leave to proceed in this lawsuit on an Eighth Amendment claim against defendants Murphy, Nybus and Pollack for their alleged failure to respond appropriately to his reports in January of 2019 that another inmate, Jackie Lott, was threatening him, which led to that same inmate attacking him. After he filed suit in August of 2019, the court also granted McDonald leave to pursue a First Amendment retaliation claim against defendant Murphy as well, for allegedly planting contraband and pursuing punishment against him.

At the time the court screened this lawsuit, McDonald further sought preliminary injunctive relief in the form of: (1) prohibiting Jackson staff from contacting his family; (2) requiring his transfer to another institution; (3) housing him away from the inmate that attacked him; and (4) ensuring McDonald's access to the prison's grievance system. The court denied that motion because the relief McDonald was seeking was unrelated to his claims going forward in this lawsuit in at least two, fundamental respects: (1) he was not proceeding in an on-going retaliation claim; and (2) he had not alleged that any of the

defendants in this lawsuit were involved in ongoing mistreatment by Jackson staff. (5/29/20 Order (dkt. #20) 5-7.) Even so, the court denied the motion without prejudice, noting that McDonald may renew it if he could show that: (1) defendant Murphy is continuing to retaliate against him; *or* that he faces a continuing risk of Lott attacking him, and (2) defendants are not taking appropriate measures to prevent another attack.

Since then, McDonald has filed three separate motions for a preliminary injunction, along with letters raising concerns about his ability to litigate this case. (Dkt. ##32, 33, 49, 68, 73.) He has also moved to add Wisconsin Department of Corrections Secretary Kevin Carr as a defendant (dkt. #46). In response, defendants seek summary judgment on the ground that McDonald failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (Dkt. #50.) For the following reasons, the court must deny McDonald's motions, grant defendants' motion for summary judgment, and dismiss his claims without prejudice.

OPINION

I. **McDonald's motions and letters (dkt. ##32, 33, 49, 68, 73)**

In his renewed motions for a preliminary injunction, McDonald repeats concerns that staff at Jackson are mistreating him because of this lawsuit and adds new concerns about his potential exposure to COVID-19 at Jackson. Yet to prevail on a motion for a preliminary injunction, however, plaintiff must show a likelihood of success on the merits of his case, a lack of an adequate remedy at law and an irreparable harm that will result if the injunction is not granted. *Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007).

2

Furthermore, the PLRA provides that any injunctive relief to remedy prison conditions must be "narrowly drawn to extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (vacating overbroad injunction related to the procedures for transferring prisoners to a supermax prison). The PLRA also requires this court to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief." § 3626(a)(2).

In renewing his preliminary injunction motion, McDonald largely repeats his previously raised concern that the Jackson staff are calling his wife, then asks to be moved to another housing unit because two Jackson employees (non-defendants Kragness and Derus) have engaged in "acts of retaliation," including telling other Jackson staff to write conduct reports against him and remove him from work positions. In his second motion, McDonald also raises concerns about how Jackson officials were preventing COVID-19 spread at the institution. More specifically, McDonald claims that he was moved from the Oxbow Unit to the Quarry Unit because of a COVID-19 exposure, but asked to be moved back to the Oxbow Unit because Lott was not located there, and the officers who were involved in failing to protect him from Lott might still be on the Quarry Unit. McDonald also claims he brought these issues up with Captain Sharp and Sergeant McClimus (again non-defendants), as well as his concerns about exposure to COVID-19, given that he has heart issues, sinus problems and uses a CPAP machine. McDonald further alleges his attempts to ask his unit manager Derus about his need to be moved was unsuccessful.

Finally, McDonald adds that on October 17, 2020, the Quarry Unit was locked down due to a positive COVID-19 case, and social distancing measures were not put in place for inmates in the eating and dining areas.[1]

While McDonald asks that the court order him returned to the Oxbow Unit or to another institution, his renewed motions for preliminary relief must again be denied since they raise issues beyond the scope of this lawsuit. In particular, McDonald again seeks to proceed on new claims against non-defendants Derus, Kragness, Sharp or McClimus or arising out of Jackson staff's alleged failure to properly mitigate the risk of COVID-19 within his housing unit. In contrast, the claims on which McDonald had leave to proceed in this lawsuit are limited to events that took place between January and August 2019 involving defendants Murphy, Nybus and Pollack.[2] At screening, the court explained that McDonald's requests for injunctive relief were unavailable because his allegations were vague and unrelated to his claims in this lawsuit. For that reason alone, plaintiff's motion for a preliminary injunction must be denied.

---

[1] In a subsequent submission, McDonald once again repeats concerns about COVID-19 at Jackson, reiterating that inmates in his unit are testing positive for COVID-19 and that Derus is taking action to harm him.

[2] McDonald has not sought leave to amend his complaint to include claims against other Jackson officials, and if he did, the motion would be a nonstarter, since this court typically does not allow prisoners to supplement or amend complaints to include new claims of retaliation for filing the underlying lawsuit. *See, e.g., Atkinson v. Mackinnon*, No. 14-cv-736-bbc, 2015 WL 13658057, at *1-2 (W.D. Wis. Oct. 29, 2015) ("These types of retaliation claims risk delaying resolution of the case indefinitely while the parties litigate and conduct discovery on each discrete instance of retaliation that may occur while the lawsuit progresses."); *Fitzgerald v. Greer*, No. 07-cv-61-bbc, 2007 WL 5490138, at *1 (W.D. Wis. Apr. 2, 2007) ("[A]llowing ongoing claims of retaliation to be added to a lawsuit as the lawsuit progresses could result in a lawsuit's life being extended indefinitely.").

Regardless, the concerns McDonald raises in these motions continue to be too vague to suggest that he may be entitled any form injunctive relief. For example, McDonald alludes to a concern that associates of inmate Lott's might be housed near him, but he has not provided any details about who these individuals are, whether they have threatened him, otherwise pose a threat to his safety, or most importantly, whether any named defendant is ignoring legitimate concerns for his safety. As for his ongoing concerns about exposure to COVID-19, while the court is sympathetic, his allegations do not support a reasonable inference that the mitigation efforts taken at Jackson violate his constitutional rights. Further, although his more recent letters complain about opened mail, revocation of a legal loan, and other issues that he suggests relate to his ability to litigate this case and deal with alleged retaliation (dkt. ##68, 73), McDonald has still been able to respond substantively to defendants' motion for summary judgment, so there is no basis to intervene to ensure that he has adequate access to this court.

There may be more to the story about events that have occurred since McDonald initiated this lawsuit, and if he provides more details, it *may* be McDonald could articulate a claim cognizable under 42 U.S.C. § 1983, but that would not alter the court's lack of authority to address these new concerns in *this* lawsuit. Instead, he must use the procedures within the institution. Then, once McDonald has exhausted his administrative remedies, he is free to file a *separate* lawsuit detailing his claims if he continues to believe that his constitutional rights were been violated.

Finally, in his first motion, and in a more recent letter, McDonald also seeks assistance in recruiting counsel to represent him. (*See* dkt. #32, at 3-4, #73.) Before

5

deciding whether to recruit counsel, however, a court must find that the plaintiff has made reasonable efforts to find a lawyer on his own and has been unsuccessful. *Jackson v. County of McLean*, 953 F.2d 1070, 1072-73 (7th Cir. 1992). McDonald does not represent that he has even attempted to recruit an attorney on his own, so the court must deny his motion for that reason alone. In any event, the court will not recruit counsel for a *pro se* litigant like McDonald unless there is evidence in the record indicating that he is incapable to litigating this case without an attorney. *Pruitt v. Mote*, 503 F.3d 647 (7th Cir. 2007) (en banc) (the central question in deciding whether to request counsel for an indigent civil litigant is "whether the difficulty of the case -- factually and legally -- exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself"). McDonald's filings to date also suggest a clear understanding of the operative facts and legal standard governing his claims, most clearly illustrated by his response to defendants' motion for summary judgment, which included an opposition brief, declaration and supporting evidence. Therefore, the court sees no basis to conclude that the legal and factual difficulties presented by this case are beyond McDonald's capabilities, so his requests for assistance in recruiting counsel will be denied.

## II.  Motion to Add Carr as a Defendant (dkt. #47)

Next, McDonald asks to add Carr as a defendant in this lawsuit, at least for purposes of discovery, claiming that he needs to gather evidence from several non-parties, including Carr, who were "involved in the video observation, conduct report," and investigation. (*See* dkt. #46 at 2.) However, Carr need not be a named defendant for McDonald to collect

evidence from him. Finally, since his existing claims are being dismissed without prejudice for his failure to exhaust administrative remedies, his motion will be denied.

III.  **Defendants' motion for summary judgment (dkt. #50)**

Section 1997e(a) of the PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Generally, to comply with § 1997e(a), a prisoner must "properly take each step within the administrative process" that are "in the place . . . at the time, [as] the [institution's] administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). This includes: (1) compliance with instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005); and (2) filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

The purpose of the PLRA exhaustion requirement is to give prison administrators a fair opportunity to resolve grievances without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). If a prisoner fails to exhaust administrative remedies before filing a lawsuit, the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that a plaintiff failed to exhaust, *Jones v. Bock*, 549 U.S. 199, 216 (2007), and "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Furthermore, inmates are required to exhaust only those

administrative remedies that are available to them; administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In Wisconsin, prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner ("ICE") within 14 days of the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.07. Moreover, the inmate complaint must "clearly identify the issue" that the inmate seeks to raise. *Id.* § 310.07(5). An Inmate Complaint Examiner ("ICE') may then reject a complaint for multiple reasons, including a failure by the inmate to attempt to resolve the issue informally before filing the complaint. *Id.* § 310.10(5). However, the inmate may appeal the rejected complaint to the appropriate reviewing authority within ten days. § 310.10(10).

On the other hand, if the complaint is not rejected, the ICE must make a recommendation to the reviewing authority, who in turn renders a decision. *Id.* §§ 310.10(12)., 310.11. If that decision is unfavorable to the inmate, they still may appeal to the corrections complaint examiner ("CCE"). *Id.* § 310.12(1). Appeals to the CCE must be filed within fourteen days, unless good cause is shown for an untimely filing. *Id.* § 310.12 (6). The CCE then makes a recommendation to the Secretary of the Department of Corrections, who will take final action on the complaint. *Id.* § 310.13.

As an initial matter, defendants are plainly entitled to summary judgment on McDonald's retaliation claim against defendant Murphy. McDonald did not file *any* accepted inmate complaint related to Murphy planting contraband in his cell on August

8

17, 2019, *or* having him fired, much less doing so to punish him for filing this lawsuit. Since McDonald acknowledges as much, defendants are entitled to summary judgment with respect to this claim without further discussion.

As for his claims related to the January 31, 2019, assault, while McDonald filed four inmate complaints related to that incident, none satisfy the exhaustion requirement with respect to his failure-to-protect claim. On the contrary, three of the complaints were rejected because they did not follow the requirements of Wis. Admin. Code § DOC 310.07(1), requiring McDonald to attempt to resolve the issue before filing the inmate complaint. Not only is it undisputed that McDonald failed to appeal the rejection of those inmate complaints to the reviewing authority as required by Wis. Admin. Code § DOC 310.10(10), but McDonald failed to allege in any of his rejected inmate complaints that a correctional officer failed to protect him from inmate Lott's assault.

In addition, McDonald filed an inmate complaint on March 13, 2019, complaining that he had not received a response to his requests for access to a bible study program. (Dkt. #52, at 13.) The complaint was rejected. An inmate complaint was also received on July 26, 2019, in which McDonald wanted to know whether the officers who were working at the time of his assault (presumably defendants) had been disciplined for failing to protect him from the assault. (Dkt. #64-2.) However, that inmate complaint was rejected as well, both because" (1) McDonald had not attempted to resolve the issue informally; and (2) it was unclear what relief McDonald was seeking through the ICRS. (Dkt. #52, at 7-8.) McDonald argues that he *had* attempted to resolve the dispute informally, so the rejection was inappropriate, but McDonald's disagreement does not

9

suggest he followed the ICRS procedures by appealing the rejection of the complaint. Indeed, if McDonald disagreed with the reason for rejection, he was required by Wis. Admin. Code § DOC 310.10(10) to appeal that decision with evidence of his effort to resolve the dispute informally. Since there is no question that McDonald failed to take that step, this complaint may not serve to exhaust his administrative remedies for the claims in this lawsuit.

Eventually, McDonald did file an inmate complaint related to the assault, JCI-2019-13512, which was accepted by the ICE's office on August 1, 2019. In that inmate complaint, McDonald alleged that the incident report related to the assault was not completed. (Ex. 1002 (dkt. #52-3) 10.) However, ICE investigated the complaint and found that a conduct report was written by Ms. Derus after the assault, which was all that was required. Therefore, ICE recommended dismissal of the complaint, and the Reviewing Authority dismissed the complaint on August 5, 2019. McDonald timely appealed the dismissal, claiming that ICE should have determined whether or not the officers working at the Quarry Unit on the morning of the assault had written an incident report after McDonald told them about the result. McDonald also alleged that the failure to write the incident report violated state statutes. The CCE reviewed McDonald's appeal, and determined that because the incident was documented in a conduct report, however, there was no requirement to submit an incident report. The CCE further advised McDonald that he could contact law enforcement directly if he wanted to pursue the matter further. Regardless, the CCE recommended dismissal of the appeal, and the Office of the Secretary accepted this recommendation on August 16, 2019.

Thus, this inmate complaint also failed to alert prison officials of the basis for his complaint against defendants (or any other Jackson officials) in not protecting McDonald from inmate Lott's assault. Rather, McDonald only raised concerns about how Jackson staff *documented* that assault. As such, the ICE that reviewed JCI-2019-13512 reasonably cabined the investigation to whether an incident report should have been created after the assault. Since McDonald's claims about inadequate documentation said nothing about defendants' failure to prevent him from assault, he did not afford prison officials an opportunity to investigate that claim that in the first place. Thus, he did not exhaust his administrative remedies for the claims in *this* lawsuit via JCI-2019-13512.

Beyond citing the accepted inmate complaint, McDonald claims in opposition to finding of waiver: that prison officials were nevertheless aware he believed defendants failed to protect him from Lott's assault. In particular, McDonald directs the court to several of his "Interview/Information Requests" making inquiries of different Jackson officials about the January 31, 2019, assault. (Dkt. ##64-4 to 64-7, 64-9, 64-13.) McDonald points to these documents as evidence of his unsuccessful efforts to exhaust his administrative remedies. Beyond being dated between July of 2019 and January of 2021 -- long after the assault -- however, none of these documents were submitted through the ICRS system, and none indicate that any prison officials were preventing him from filing a timely inmate complaint after the January 31, 2019, assault. Therefore, these documents are also insufficient evidence that McDonald exhausted his available administrative remedies.

McDonald next directs the court to a document which appears to be the conduct

11

report in which Lott was charged with assault. (*See* dkt. #64-1.) McDonald appears to argue that an interview that was conducted pursuant to conduct report charges somehow served to exhaust his administrative remedies. Again, however, proceeding on a conduct report against *another* inmate does not exhaust *McDonald's* administrative remedies in this lawsuit. In any event, the allegations in the conduct report do *not* include McDonald's report to correctional officers that Lott threatened to assault him *before* the assault, so the information in the conduct report would not have alerted prison officials to McDonald's claim that the officers failed to protect him from a known risk of an assault.

Finally, after briefing on defendants' summary judgment motion was complete, McDonald filed a motion seeking to conduct discovery related to defendants' exhaustion defense, and a motion for a *Pavey* hearing. (Dkt. ##69, 77.) However, in his motion seeking additional discovery, McDonald states that he "learned" records exist showing he communicated with prison officials about the three defendants' involvement in the events that took place on January 31, 2019. However, McDonald does not indicate that any of the records sought would show that he actually complied with the ICRS procedures. Instead, he represents that he would obtain interview requests he submitted in November 2020 about the incident. The court sees no reason to allow additional time to obtain these documents, since there is no reasonable basis on this record to infer that McDonald might be able to show he exhausted his administrative remedies or was prevented from doing so by prison officials.

Nor is a so-called *Pavey* hearing necessary. When the affirmative defense of exhaustion involves a genuine dispute of material fact, the court may, as fact-finder, hold

a hearing under *Pavey v. Conley*, 528 F.3d 494, 496-98 (7th Cir. 2008). As explained above, however, there are not material factual disputes related to whether McDonald exhausted his administrative remedies as to his failure to protect and retaliation claims. McDonald has neither attested that there is more to the story related to his efforts to follow the ICRS procedures, nor, more importantly, that there are factual disputes related to whether he had the ability to file a timely inmate complaint to grieve his claims.

Accordingly, defendants have proven that McDonald failed to exhaust his claims in this lawsuit, and they will be dismissed without prejudice, although likely functioning as a dismissal with prejudice given the passage of time. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice and so does not bar reinstatement of the suit unless it is too late to exhaust.") (citations omitted).

## ORDER

IT IS ORDERED that:

1) Plaintiff James McDonald's motions for a preliminary injunction (dkt. ##32, 33, 49) and motion to add the Secretary of the Wisconsin Department of Corrections as a Defendant (dkt. #46) are DENIED.

2) Defendants' motion for summary judgment (dkt. #50) is GRANTED.

3) Plaintiff's motion for discovery and a *Pavey* hearing (dkt. ##69, 77) are DENIED.

Entered this 9th day of July, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge